<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TONINO LABELLA, | : | |
| | : | Civil Action No. 07-2718 (WJM) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| U.S. ATTORNEY GENERAL | : | |
| ALBERTO GONZALES,[1] et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Tonino Labella
Moshannon Valley Correctional Institution
555 Cornell Drive
Philipsburg, PA 16866

**MARTINI**, District Judge

Plaintiff Tonino Labella, a federal pre-trial detainee confined at Hudson County Correctional Center at the time he submitted this Complaint, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[2]  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C.

_____

[1] Plaintiff incorrectly named the former U.S. Attorney General as "Antonio R. Gonzales" in the Complaint.

[2] This Court previously entered an Order administratively terminating this matter because Plaintiff's original application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> was deficient.  Plaintiff has submitted a complete application, and this Court will order that the matter be re-opened.

§1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that while confined at Passaic County Jail, as a federal pre-trial detainee, he was denied a medically prescribed cardiac diet (low sodium, low cholesterol, low fat). He states that he wrote grievances and letters to Sheriff Speziale, Warden Charles Meyers, and the U.S. Marshal James T. Plousis, but never received the diet.[3]

Plaintiff alleges that on three occasions, while confined at Passaic County Jail, he was denied a conference with a representative from an Italian law firm, where criminal charges

---

[3] It appears from Plaintiff's Complaint and the application for leave to proceed in forma pauperis that he was confined at Passaic County Jail from approximately July 10, 2006 to March 30, 2007.  This Complaint is dated June 5, 2007.

were then pending against him.[4]  As a result, his legal representative had to make a return trip to the United States at a cost to Plaintiff of $7,500.  He alleges that he notified Sheriff Speziale and Warden Meyers of this incident.  Plaintiff does not allege any damage to his criminal case as a result of the delayed visit.

Plaintiff alleges that, while confined at Passaic County Jail, jail officials confiscated several copies of a questionnaire he had prepared regarding conditions of confinement at Passaic County Jail.  Three days later, Plaintiff was transferred to Hudson County Correctional Center.  Plaintiff alleges that during the transfer his legal documents were read to determine whether he had any other documents critical of Passaic County Jail.  Plaintiff alleges that these actions made it impossible for him to file a challenge to the conditions of confinement at Passaic County Jail while he was confined there. He later complained of this incident to the U.S. Marshal.

Plaintiff also alleges that the law library at the Passaic County Jail is inadequate because (1) the Lexis/Nexis database is updated only twice a year, (2) there are too few workstations, (3) the work stations are often not operating.  Plaintiff alleges

---

[4] Two of these occasions occurred the day, and the day after, this Court issued an order permitting the visit.  See United States v. Labella, 05-cr-0087 (WJM) (Docket Entries Nos. 57, 58).

3

that he advised the administration and the U.S. Marshal of the problems with the law library.

Plaintiff complains about the conditions of confinement at Passaic County Jail. He alleges that he was housed in a dormitory-style area with 62 men, that provided roughly 10 square feet per man. These dormitories have 2 toilets, 2 urinals, 2 showers, and 4 sinks. This alleged overcrowding caused difficulty in sleeping, increased stress, and almost daily fights between inmates. He alleges that he was given a hygiene packet upon arrival at Passaic County Jail consisting of a toothbrush, 2 small tubes of toothpaste, a small container of deodorant, one green shirt, one pair of green pants. He was not given any socks, underwear, or tee shirts. On a weekly basis, he was given one roll of toilet tissue and 4 small bars of soap. All further hygiene products were required to be purchased from the commissary. He states that "If you do not have funds in your commissary account, you must rely on the charity of other inmates." Plaintiff does not allege that he was without funds or that he otherwise was unable to purchase desired hygiene products. Plaintiff alleges that the cells are vermin infested. He alleges that the inmates are required to sleep in close proximity to open urinals. He alleges that the inmates are not given adequate cleaning supplies. He alleges that food trays are visibly dirty. He alleges that there are only two hair clippers

and two nail clippers for 250 inmates, and that these items are not disinfected between uses.  He alleges that the heating, ventilation, and air conditioning are inadequate, and that temperatures frequently fall below 50 degrees in the winter and above 120 degrees in the summer.  He alleges that recreation is inadequate, that prisoners are allowed outdoor recreation for only one hour at a time, four times per week, and that inmates can go to the gym only one hour at a time, three times per week. He alleges that Passaic County Jail houses all federal inmates together, without regard to their criminal history, subjecting him to threats from gang members.  Plaintiff alleges that he complained to the U.S. Marshal about conditions at Passaic County Jail.

Plaintiff names as defendants the U.S. Attorney General, U.S. Marshal James T. Plousis, Sheriff Jerry Speziale, and Warden Charles Meyers.  He seeks compensatory and punitive damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a

governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). <u>See also</u> <u>Morse v. Lower Merion School</u>

Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

7

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,

1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

The claims against Defendants Sheriff Jerry Speziale and Warden Charles Meyers arise under § 1983, as they are state officers.

### IV.   Bivens v. Six Unknown Agents

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988).

Relying upon Bivens, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or

unconstitutional conditions of confinement.  See, e.g., Lyons v.
U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Iqbal v. Hasty, 490
F.2d 143 (2d Cir. 2007), petition for cert. filed, 76 U.S.L.W.
3349 (Dec. 17, 2007) (No. 07-0827); Magluta v. Samples, 375 F.3d
1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir.
1978), cert. denied, 446 U.S. 928 (1980).  Thus, any claims
against the U.S. Attorney General or the U.S. Marshal arise under
Bivens.

The Supreme Court has not addressed whether supervisors in
Bivens actions may be held liable on a theory of respondeat
superior.  Most courts to address the issue, however, have held
that liability may not be based on respondeat superior.  See,
e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir.
2000)(collecting cases); Laswell v. Brown, 683 F.2d 261, 268 &
n.11 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983) (basing
its conclusion on the fact that the Supreme Court has looked to
§ 1983 cases in evaluating the nature of defendant officials'
qualified immunity); Kite v. Kelly, 546 F.2d 334, 337-38 (10th
Cir. 1976).  See also Parker v. U.S., 197 Fed.Appx. 171, 173 n.1
(3d Cir. 2006) (not precedential); Balter v. U.S., 172 Fed.Appx.
401, 403 (3d Cir. 2006) (not precedential).  This Court finds
persuasive the reasoning of those courts that have declined to
impose respondeat superior liability in Bivens actions.  Here,
Plaintiff has not alleged any personal involvement by the U.S.

10

Attorney General; accordingly, all claims against the U.S.
Attorney General will be dismissed without prejudice.

V.   ANALYSIS

A.   Medical Care

Pre-trial detainees and convicted but unsentenced prisoners
retain liberty interests firmly grounded in the Due Process
Clause.[5] See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005);
Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of
whether such a detainee or unsentenced prisoner has been deprived
of liberty without due process is governed by the standards set
out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).
Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...
>
> Not every disability imposed during pretrial
> detention amounts to "punishment" in the constitutional
> sense, however.  Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...

---

[5] Plaintiff's claims against the state actors arise out of
the Due Process Clause of the Fourteenth Amendment.  Plaintiff's
claims against the U.S. Marshal arise out of the Due Process
Clause of the Fifth Amendment.

11

A court must decide whether the disability is
imposed for the purpose of punishment or whether it is
but an incident of some other legitimate governmental
purpose.  Absent a showing of an expressed intent to
punish on the part of detention facility officials,
that determination generally will turn on "whether an
alternative purpose to which [the restriction] may
rationally be connected is assignable for it, and
whether it appears excessive in relation to the
alternative purpose assigned [to it]."  Thus, if a
particular condition or restriction of pretrial
detention is reasonably related to a legitimate
governmental objective, it does not, without more,
amount to "punishment."  Conversely, if a restriction
or condition is not reasonably related to a legitimate
goal--if it is arbitrary or purposeless--a court
permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees <u>qua</u>
detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  441 U.S.

at 539 n.20.  Nor are grossly exaggerated responses to genuine

security considerations.  <u>Id.</u> at 539 n.20, 561-62.

Plaintiff's allegations regarding the denial of his

medically prescribed cardiac diet are sufficient to avoid

12

dismissal at this screening stage of the litigation.  These
claims may proceed as against Defendants James T. Plousis, Jerry
Speziale, and Charles Meyers.

B.    Conditions-of-Confinement Claim

     Plaintiff's claim that the conditions under which he was
confined as a pre-trial detainee also arises under the Due
Process Clause and is governed by the standards set forth in Bell
v. Wolfish.

     Plaintiff's allegations that the aggregate conditions under
which he was confined violate the Due Process Clause is
sufficient to avoid dismissal at this screening stage and may
proceed as against Defendants James T. Plousis, Jerry Speziale,
and Charles Meyers.  However, Plaintiff lacks standing to assert
claims for injuries allegedly suffered by other prisoners.  See
Warth v. Seldon, 422 U.S. 490, 498-99 (1975).  Thus, he may not
premise his constitutional claim on alleged violations of other
prisoners' rights, for example, deprivation of other prisoners'
access to personal hygiene items because they lacked funds to
purchase those items.  This claim will be permitted to proceed
only with respect to the conditions under which Plaintiff,
himself, was confined.

C.    Denial of Visit with Italian Counsel

     Plaintiff alleges that he was, on three separate occasions
within a space of sixteen days, denied a visit with a

13

representative from his Italian counsel's office, necessitating a return trip to the United States at a cost to Plaintiff of $7,500.  Plaintiff does not allege any impairment of his ability to defend the Italian criminal action against him as a result of the delayed visit.  He alleges that he informed Defendants Sheriff Speziale and Warden Meyers of this "incident," but does not allege that either of them was personally involved in the decision to deny the visit on these three dates.[6]

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication).  See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates).  Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits,

---

[6] As this visitation issue does not relate to any criminal litigation pending in the United States, the Sixth Amendment right to counsel is not implicated.

14

correspondence, and telephone calls." <u>Owens-El v. Robinson</u>, 442 F.Supp. 1368, 1386 (W.D. Pa.) (citation omitted), <u>supplemented and finalized</u>, 457 F.Supp. 984 (W.D. Pa. 1978), <u>aff'd in part and vacated in part on other grounds sub nom.</u>, <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754 (3d Cir. 1979).

However, there is no substantive due process right to "unfettered visitation." <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989).

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

<u>Overton v. Bazzetta</u>, 539 U.S. 126, (2003) (citations omitted).[7]

----

[7] Nor is this Court prepared to find that the court order to permit the visit created a constitutionally-protected liberty interest. Certainly, there are occasions when a court order confers a constitutionally protected liberty interest. Typically, these orders involve a decision regarding release, custody level, or open-ended serious conditions of confinement. <u>See</u>, <u>e.g.</u>, <u>Medina v. District of Columbia</u>, 517 F.Supp.2d 272 (D.D.C. 2007) (collecting cases); <u>McGann v. cunningham</u>, 315 F.Supp.2d 150 (D.N.H. 2004). It does not follow, however, that every violation of a court order may do double duty as a constitutional violation. <u>See</u> <u>Town of Castle Rock, Colo. v. Gonzales</u>, 545 U.S. 748, 765 (2005) (individual entitlement to enforcement of restraining order does not constitute a "property interest" for purposes of the Due Process Clause). The short-term delay of visitation described in the Complaint does not constitute an "atypical and significant hardship" upon which may be premised a due process claim. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). Nevertheless, no party to this litigation should confuse this result with acquiescence by this Court in any deliberate refusal to comply with this Court's Order permitting

When a prison regulation or practice impinges on inmates' or free citizens' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  The Supreme Court has identified four factors to be considered in determining the reasonableness of the regulation or practice at issue.

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. ... Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.  Moreover, the governmental objective must be a legitimate and neutral one.  ...

> A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates.  ...

> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.  ...

> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  This is not a "least restrictive alternative" test.  ...

<u>Turner</u>, 482 U.S. at 89-90  (citations omitted).

---

the visit, otherwise subject to enforcement through this Court's contempt power.

In applying the Turner analysis, the defendant bears the burden of going forward with some evidence that the challenged regulation or practice is reasonably related to a valid penological objective.  Turner, 482 U.S. at 90.

> But the legitimate penological interest may not be presumed.  "[T]he [defendant] must, at the very least, adduce some penological reason for its policy at the relevant stage of the judicial proceedings. '[]C]onsiderations advanced to support a restrictive policy [must] be ... sufficiently articulated to permit ... meaningful review.'  Thus at a minimum, the reasons must be urged in the district court."

Clement v. California Department of Corrections, 220 F.Supp.2d 1098, 1105 (N.D. Cal. 2002) (quoting Armstrong v. Davis, 275 F.3d 849, 874 (9th Cir. 2001) and Walker v. Sumner, 917 F.2d 382, 386 (9th Cir. 1990)).  Nevertheless, the ultimate burden of proof is on the prisoner to establish that the challenged regulation or practice is invalid.  Overton v. Bazetta, 539 U.S. 126, 132 (2003).

The Supreme Court has subjected prison regulations limiting visitation to the Turner analysis.  See Overton v. Bazzetta, 539 U.S. 126 (2003).

Plaintiff does not allege that any of the defendants here was personally involved in the decision to deny a visit with the representative from Plaintiff's Italian counsel on these three occasions.  To the contrary, Plaintiff alleges that he later notified Sheriff Speziale and Warden Meyers of the incident and

17

that the visit did take place on another occasion.  Accordingly, he has failed to state a claim against these defendants.

In addition, as noted above, there is no substantive due process right to "unfettered visitation," and the specific contours of prisoners' First Amendment rights to free speech and association have not been established.  Here, Plaintiff does not allege that he was denied other means of communication with his Italian counsel or that his ability to prepare his defense to the charges in Italy was in any way impaired.  Nor does Plaintiff challenge a regulation, policy, or practice.  Instead, he basis his claim on a very short-term delay in visitation.  However inconvenient the delay and incremental cost may have been to Plaintiff, this isolated incident does not amount to a violation of Plaintiff's First Amendment right of association.  Cf., e.g., Milan v. Duckworth, 920 F.2d 935 (Table), 1990 WL 208598, n.1 (7th Cir. 1990) (single instance of visitation denial does not state a claim for violation of the First Amendment); Wilfong v. Morris County Correctional Facility, 2006 WL 3392938, n.3 (D.N.J. Nov. 21, 2006) (72-hour delay in delivery of non-legal mail does not violate First Amendment right of association).  This claim must be dismissed.

D.    Access-to-Courts Claim

Plaintiff alleges that he was denied his right of access to the courts by confiscation of a questionnaire about prison

18

conditions, transfer to Hudson County Correctional Center three days later (allegedly as a disciplinary measure for producing material that could be used by other inmates), and review of his legal documents during the transfer to see if they contained additional documents critical of Passaic County Jail, all of which Plaintiff contends prevented him from filing a challenge to his conditions of confinement during the eight-month period while he was detained at Passaic County Jail.  Plaintiff alleges that he later informed the administration at Passaic County Jail and the U.S. Marshall of this incident, which this Court construes as referring to the transfer, the review of the legal documents, or both.

Plaintiff also alleges general inadequacies in the law library and that he notified the U.S. Marshal and the administration of Passaic County Jail of those inadequacies.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,

Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also
Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

    In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of
conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355
(1996) (emphasis in original).

    There is no "abstract, freestanding right to a law library
or legal assistance, [and] an inmate cannot establish relevant
actual injury simply by establishing that his prison's law
library or legal assistance program is subpar in some theoretical
sense.  ...  [T]he inmate therefore must go one step further and
demonstrate that the alleged shortcomings in the library or legal

assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying.  [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel.  See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff has failed to allege any "actual injury." Plaintiff does not allege that the general inadequacies of the law library caused him actual injury.  In his description of the problems caused by the six-months update to the Lexis database, for example, he notes that the decision in U.S. v. Booker, 543 U.S. 220 (2005), in which the Supreme Court held that the U.S. Sentencing Guidelines were not constitutional, was not available to inmates until August of 2005.  Plaintiff was not confined at Passaic County Jail until 2006, and he was a pre-trial detainee at that time.  So he does not contend that the delay in availability of the Booker decision caused him any actual injury.

In addition, the actions taken by corrections officers in confiscating Plaintiff's questionnaire three days before his

transfer and reviewing his legal documents during his transfer, however inappropriate they may otherwise have been, did not prevent Plaintiff from filing a civil rights action challenging his conditions of confinement while confined at Passaic County Jail.  This Court has already noted that Plaintiff had no standing to assert the claims of other prisoners.  Plaintiff has not lost the cause of action related to his own conditions of confinement; those claims are included in this Complaint.

For the foregoing reasons, Plaintiff has failed to state a claim for denial of access to the courts.

## VI.  CONCLUSION

For the reasons set forth above, Plaintiffs due process claims regarding the denial of medical care and the conditions of confinement at Passaic County Jail may proceed as against Defendants U.S. Marshal James T. Plousis, Sheriff Jerry Speziale, and Warden Charles Meyers.  All other claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to correct the deficiencies noted here, the Court will

grant Plaintiff leave to file an amended complaint.[8]  An

appropriate order follows.

                                s/William J. Martini

                                _____
                                William J. Martini
                                United States District Judge

Dated: 3/6/08

_____

    [8] Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in
the case and "cannot be utilized to cure defects in the amended
[complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.